FILED
MAR - 6 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

In The United States District Court
For The District of Columbia

Kelvin J. Miles
MCI-H
18601 Roxbury Rd.
Hagerstown, MD 26746

v.

United States

CASE NUMBER 1:07CV00441
JUDGE: Paul L. Friedman
DECK TYPE: Habeas Corpus/2255
DATE STAMP: 03/06/2007

Petition For Writ Of Habeas Corpus

Pro Se Petitioner Kelvin J. Miles moves this court for "Petition for Writ of Habeas Corpus" pursuant to Fed. R. Civ. P. 28 U.S.C. 2254 and 28 U.S.C. 2241 in the above captioned matter.

1. Petitioner states that the Superior Court of the District of Columbia criminal trial no. F-5256-79 and Court of Appeal for the District of Columbia direct appeal no. 81-731 and 82-246 ~~because~~ ~~its~~ because the local remedy is in adequate to test the legality of his detention when defendant's right to an independent grand jury was violated in violation of due process rights. See Exhibit one pages 49, 50, 51 attached to this petition.

2. Petitioner states that the prosecutor mislead and ~~the~~ perjured to the court that he did not inform the complainant of

(1)

RECEIVED MAR - 6 2007 NANCY MAYER WHITTINGTON, CLERK U.S. DISTRICT COURT

where defendant will be seated at court in violation of due process rights. See exhibit #one pages 51, 52 and 53 attached to this petition.

3. Petitioner states that he was denied due process of law by the lower courts when the complainant positively identified George Lane ninty percent, a dark skinned male and failed to identify Petitioner light skinned male in a photo array of a lineup during pretrial. See exhibit #one pages 49, 50, 51, 52 and 53 attached to this petition.

Wherefore, Petitioner prays that he is granted a hearing and that the lower judgment be reversed.

Kelvin J. Miles, 157867
MCI-H
18601 Roxbury Road
Hagerstown, Md. 21746

Certificate of Services

I hereby certify, that a copy of this petition was mailed on 2-27-07 to U.S. Attorney Office - 555 4th Street NE. Washington D.C. 2000

483 A.2d 649
(Cite as: 483 A.2d 649)

Page 46

District of Columbia Court of Appeals.

Kelvin J. MILES, Appellant,
v.
UNITED STATES, Appellee.

Nos. 81-731, 82-246.

Argued March 10, 1983.
Decided Oct. 24, 1984.

Defendant was convicted in the Superior Court, Fred B. Ugast, J., of first- degree burglary and assault with intent to commit rape, and he appealed. The Court of Appeals, Belson, J., held that: (1) defendant's right to an independent grand jury was not violated by the presentation to third grand jury of transcript of a witness' testimony to a previous grand jury rather than live testimony, or by the Government's failure to introduce evidence to the third grand jury that purportedly exculpated defendant but inculpated the witness; (2) prosecutor's pretrial conversations with complainant concerning an in-court identification and the location of the defense table did not constitute intentionally suggestive efforts to obtain an initial in-court identification; (3) defendant did not establish the existence of peculiar availability and elucidation necessary to warrant a missing witness instruction; (4) detective's testimony concerning alleged telephone call with defendant was harmless error, even assuming prosecution's failure to lay a proper foundation; and (5) prosecutor's closing argument did not improperly comment upon defendant's silence at trial.

Affirmed.

West Headnotes

[1] Grand Jury ⚖1
193k1

Grand jury's responsibilities include both the determination whether there is probable cause to believe that a crime has been committed and the protection of citizens against unfounded criminal prosecutions.

[2] Grand Jury ⚖36.8
193k36.8

Grand jury's sources of information are widely drawn and the validity of an indictment is not affected by the character of the evidence considered; accordingly, it is axiomatic that the prosecutor has considerable discretion in determining what evidence to present to the grand jury.

[3] Grand Jury ⚖36.8
193k36.8

Although live testimony is the preferred procedure at a grand jury proceeding, the prosecutor may use a transcript of witness' prior sworn grand jury testimony in a later, separate grand jury proceeding, if the integrity of the grand jury proceeding will not be impaired. U.S.C.A. Const.Amend. 5.

[4] Grand Jury ⚖36.8
193k36.8

Prosecutor's use of transcript of a witness' prior sworn grand jury testimony in a later, separate grand jury proceeding was permissible, where there was no attempt to deceive the grand jury by use of the transcript, the witness' testimony to the first grand jury was based upon his personal knowledge and observation of defendant's activities and not upon hearsay, there was no substantial change in the witness' testimony between first grand jury proceeding and trial which would have affected the grand jury's decision to indict, and the indicting grand jury was aware that initially the witness had been arrested and thus had some interest in the outcome of the case.

[5] Grand Jury ⚖36.8
193k36.8

A prosecutor ordinarily is not obligated to present to a grand jury all evidence that is favorable to an accused; however, where the prosecutor is aware of substantial evidence negating defendant's guilt which might reasonably be expected to lead a grand jury not to indict, his failure to disclose such evidence may lead to dismissal of the indictment. U.S.C.A. Const.Amend. 5.

[6] Grand Jury ⚖36.8
193k36.8

Defendant was not deprived of his Fifth Amendment right to an independent grand jury on ground that the Government failed to introduce to a third grand jury evidence that purportedly exculpated him and inculpated a witness, since the purportedly exculpatory evidence was either cumulative of the evidence presented which implicated the witness, or

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

483 A.2d 649
(Cite as: 483 A.2d 649)

Page 47

was collateral to the issue of defendant's guilt or innocence of the charged crimes. U.S.C.A. Const.Amend. 5.

[7] Constitutional Law ⚖︎266(3.3)
92k266(3.3)

When there is a due process challenge to an in-court identification based upon allegedly improper identification procedures, the trial court must determine whether the identification procedure employed was unnecessarily suggestive and conducive to irreparable misidentification, and if so, whether, in light of all the circumstances, the resulting identification was nonetheless reliable. U.S.C.A. Const.Amend. 14.

[8] Criminal Law ⚖︎339.8(2.1)
110k339.8(2.1)
(Formerly 110k339.8(2))

Prosecutor's pretrial conversations with complainant did not constitute intentionally suggestive efforts by the prosecution to obtain an initial in-court identification, even though complainant claimed to recognize defendant during the voir dire, after having been told by the prosecutor that he would not be seeking an in-court identification but to alert him if she did in fact see anyone she recognized and after having been taken to the courtroom and having had the respective locations of the judge, jury, testifying witnesses, and defense table described to her.

[9] Criminal Law ⚖︎788
110k788

For a party to be entitled to a missing witness instruction, the court must first determine that the requesting party has satisfied two conditions: that the witness is "peculiarly available" to the party against whom the inference is sought to be made, and that the witness' testimony would be likely to elucidate the transaction at issue.

[10] Criminal Law ⚖︎788
110k788

In determining whether an opposing party is entitled to a missing witness instruction, a witness is not "peculiarly available" to a party when there is a showing that his identity was known to the opposing party seeking the instruction, who thus could require his physical presence by subpoena; nor is a witness peculiarly available to a party if, as a practical matter,

the witness' testimony is expected to be hostile to that party.

[11] Criminal Law ⚖︎788
110k788

To meet the requirement for a missing witness instruction that the witness' testimony would be likely to elucidate the transaction at issue, the requesting party must show that the witness' testimony would be important to defendant's case, would be noncumulative, or would otherwise be superior to other testimony already given on the matter.

[12] Criminal Law ⚖︎788
110k788

Defendant was not entitled to a missing witness instruction, since he did not establish either the peculiar availability or elucidation requirement.

[13] Criminal Law ⚖︎788
110k788

Even where the prerequisites of elucidation and peculiar availability are satisfied, court has discretion to refuse a missing witness instruction; this discretionary decision should be guided by reference to the underlying rationale for the doctrine, by considering whether, from all circumstances, an inference of unfavorable testimony from an absent witness is a natural and reasonable one.

[14] Criminal Law ⚖︎1169.12
110k1169.12

Even assuming, in regard to a detective's testimony that she had spoken by telephone with defendant prior to his arrest and that he had agreed to come to police station to give a statement but never appeared, that the Government failed to lay a proper foundation that the recipient of the phone call had actually been defendant, any error in admitting the detective's testimony was harmless, since such testimony was on a matter entirely collateral to defendant's guilt of the charged offenses, neither counsel referred to such testimony in closing argument, jury was not instructed on the evidence, defendant waited until just before closing arguments to object to admission of the testimony, and the Government's evidence of guilt was weighty.

[15] Criminal Law ⚖︎721(1)
110k721(1)

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

483 A.2d 649    Page 48
(Cite as: 483 A.2d 649)

In order to determine whether a prosecutor improperly commented upon a defendant's silence at trial, Court of Appeals must determine whether the prosecutor's statements were manifestly intended or were of such character that the jury would naturally and necessarily take them to be a comment on the failure of the accused to testify.

[16] Criminal Law ☞721(3)
110k721(3)

Prosecutor's remarks in closing argument, that "If he [witness] was lying, why would he say that it was [defendant] that was with him? * * * If he was lying, I submit you wouldn't tell them the name of a real person, [defendant], that they could go and find. A real person if he gave them that name might be able to conclusively disprove [the witness'] allegation. He might be able to prove he was in a hospital," did not demonstrate the prosecutor's intent to deprive defendant of a fair trial or directly and unambiguously draw the jury's attention to defendant's failure to testify; thus, the remarks did not infringe upon defendant's Fifth Amendment rights. U.S.C.A. Const.Amend. 5.

*651 Charles J. Ogletree, Public Defender Service, Washington, D.C., with whom A. Franklin Burgess, Public Defender Service, Washington, D.C., at the time the brief was filed, was on the brief, for appellant.

*652 Anita J. Stephens, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Michael W. Farrell and David W. Stanley, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and MACK and BELSON, Associate Judges.

BELSON, Associate Judge:

In this consolidated appeal appellant seeks review of judgments of conviction for first-degree burglary, D.C.Code § 22-1801(a) (1981), and assault with intent to commit rape, D.C.Code § 22-501 (1981), and also of the trial court's subsequent order denying appellant's motion to vacate his sentence under D.C.Code § 23-110(a) (1981). Appellant contends: 1) that the government deprived him of his Fifth Amendment right to an independent grand jury by presenting to the grand jury transcripts of the testimony of the chief government witness given to a previous grand jury rather than his live testimony and by failing to present purportedly exculpatory evidence to the grand jury;  2) that the trial court erred in admitting the complainant's in- court identification of appellant;  3) that the trial court abused its discretion in failing to give missing witness instructions requested by the defense;  4) that the trial court abused its discretion in admitting evidence that appellant had agreed to come to a police station to discuss the crimes but failed to appear, and 5) that the prosecution commented improperly in closing argument on appellant's failure to testify. We find appellant's various contentions unpersuasive. Therefore, we affirm.

I

In the early evening of March 6, 1979, the complainant went to a convenience store for some groceries. While she was standing in the checkout line, a man, later identified as George Lane, attempted to start a conversation with her. Complainant ignored him and left the store with her purchases. Upon entering her apartment building, complainant again encountered George Lane, who was with another man later identified as appellant. Both Lane and appellant joined complainant in an elevator and got off with complainant on the sixth floor where her apartment was located. While in the elevator, appellant asked complainant her name. She gave him her first name.

Complainant went into her apartment. When she came back out into the hallway a few minutes later she saw appellant and Lane talking with a delivery man and with her neighbor, Bernice Barnes. Thinking that the two men must live in her apartment building, complainant remained in the hallway with them for a few minutes, then went with Barnes into Barnes' apartment. While she was there, one of the men, whom complainant did not see, knocked at the door and asked Barnes' daughter, Denise, for complainant. Denise told the man, whom she identified at trial as Lane, that complainant was not there. When he insisted that she was, Denise closed the door.

About 45 minutes later, complainant returned to her own apartment. The doorbell rang immediately and, thinking it was a neighbor, she opened the door. Standing alone in the doorway, appellant asked complainant whether he could use her bathroom. She consented. When appellant came out of the bathroom he grabbed complainant, told her he had a

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

483 A.2d 649    Page 49
(Cite as: 483 A.2d 649, *652)

gun, forced her into her bedroom and demanded that she remove her clothes. He turned out the bedroom light and, according to complainant, he sodomized her. [FN1] After hitting her several times, he tried to rape her but proved physically incapable of doing so. A few minutes later complainant, thinking he *653 had gone, phoned her sister. However, appellant immediately reappeared, shouted the name of complainant's sister into the phone, and then left the apartment.

> FN1. The indictment charged appellant with sodomy in violation of D.C.Code § 22-3502 (1981), in addition to first-degree burglary and assault with attempt to commit rape. He was acquitted of the sodomy charge.

Complainant gave physical descriptions of both appellant and Lane to the police when they arrived at her apartment. [FN2] About 3 weeks later complainant viewed a photo array, and identified Lane as her assailant with "90%" certainty. [FN3] The police arrested Lane.

> FN2. Complainant described appellant as a light-complected black male 5'8" to 5'9" tall, with brown eyes, a long face, and a small mustache, and George Lane as a dark-complected black male, 5'8" tall with thick kinky hair, a mustache, and a goatee.

> FN3. At trial, complainant testified that the black and white photograph did not accurately depict Lane's dark complexion but, rather, gave the impression that the person in the photograph had light skin. In addition, in the photograph, Lane was not wearing glasses and had no facial hair.

On April 23, 1979, complainant attended a lineup which included Lane. Complainant positively identified Lane not as her assailant but as the companion of her assailant. [FN4] Charges against Lane were dropped. Lane was nevertheless taken before a grand jury where he denied involvement in the offense. He testified that appellant was with him outside complainant's apartment on the day in question and that appellant had told him the next day that he had had sexual intercourse with complainant. The grand jury was not asked to return an indictment and was dismissed.

> FN4. At trial complainant stated that although she had previously picked out Lane's picture as that of her assailant, she was "absolutely positive" that Lane was not her assailant.

In September 1979, appellant stood in a line-up which complainant did not attend. Shortly thereafter, she was shown a photograph of this line-up but did not recognize anyone.

In October 1979 a second grand jury was convened. Complainant testified, and the government introduced the transcript of Lane's earlier grand jury testimony. Because of delays, the grand jury's term expired prior to its return of an indictment.

Subsequently a third grand jury was convened. The government presented no live witnesses, but introduced transcripts of Lane's and complainant's earlier grand jury testimony. That grand jury returned an indictment against appellant.

Upon trial, the jury found appellant guilty of assault with intent to commit rape and of burglary. Appellant filed a post-trial motion to dismiss the indictment, alleging grand jury abuse. Following a hearing, the trial court denied appellant's motion.

After noting a timely appeal from his convictions, appellant filed a motion to vacate sentence pursuant to D.C.Code § 23-110 (1981), again alleging grand jury abuse. The trial judge held evidentiary hearings, primarily to inform himself concerning the respective proceedings of each of the three grand juries. Thereafter, the court denied appellant's motion. Appellant filed a notice of appeal from that order also.

II

Appellant's first contention is that the government deprived appellant of his Fifth Amendment right to an independent grand jury in that it presented to the third grand jury transcripts of Lane's prior testimony to a previous grand jury rather than live testimony, and in that it failed to introduce evidence to the third grand jury that purportedly exculpated appellant but inculpated Lane. We find appellant's arguments unpersuasive.

[1][2] For centuries the grand jury's responsibilities have included "both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions." *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974), citing *Branzburg v. Hayes,* 408

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

483 A.2d 649
(Cite as: 483 A.2d 649, *654)

Page 50

U.S. 665, 686-87, *654 92 S.Ct. 2646, 2659-60, 33 L.Ed.2d 626 (1972). "The grand jury's sources of information are widely drawn and the validity of an indictment is not affected by the character of the evidence considered." *Calandra, supra,* 414 U.S. at 344-45, 94 S.Ct. at 618-19, citing *Costello v. United States,* 350 U.S. 359, 363-65, 76 S.Ct. 406, 408-09, 100 L.Ed. 397 (1956); *see also United States v. Washington,* 328 A.2d 98, 102 (D.C.1974), cert. granted, rev'd on other grounds, 426 U.S. 944, 96 S.Ct. 3162, 49 L.Ed.2d 1181 (1976). Accordingly, "[i]t is axiomatic that the prosecutor has considerable discretion in determining what evidence to present to the grand jury." *United States v. Boffa,* 89 F.R.D. 523, 530 (D.Del.1981), citing *United States v. Ciambrone,* 601 F.2d 616, 622 (2d Cir.1979). *See also United States v. Trass,* 644 F.2d 791, 796 (9th Cir.1981).

[3] We have stated our general preference for live testimony at a grand jury proceeding, *Harvey v. United States,* 395 A.2d 92, 97 n. 11 (D.C.1978), cert. denied, 441 U.S. 936, 99 S.Ct. 2061, 60 L.Ed.2d 665 (1979). However, we have expressly sanctioned the prosecutor's use of a transcript of a witness' prior sworn grand jury testimony in a later, separate grand jury proceeding. *United States v. Wagoner,* 313 A.2d 719 at 720-21 (D.C.1974), citing *Costello v. United States, supra,* 350 U.S. at 363, 94 S.Ct. at 408. *See also, Harvey, supra,* 395 A.2d at 97 n. 11. In *United States v. Cruz,* 478 F.2d 408, 410-11 (5th Cir.1973), the United States Court of Appeals for the Fifth Circuit also relied on *Costello* in stating:

> While the presentation of hearsay testimony of an investigating officer in lieu of readily available testimony by direct witnesses is by no means a preferred procedure, it is neither unconstitutional nor inherently wrong. In the absence of some showing that the integrity of grand jury proceedings has been impaired, an indictment even if based exclusively on such testimony will not be overturned on appeal.

The record does not reveal any attempt by the prosecutor to deceive the grand jury by the use of transcripts, as may occur where, for example, a witness' version of an occurrence has changed after a grand jury proceeding with the result that the new version negates probable cause *see, e.g., United States v. Provenzano,* 440 F.Supp. 561 (S.D.N.Y.1977). The grand jury was not misled into believing that it had received eyewitness rather than hearsay testimony; nor was this a case in which the grand jury would not have indicted a defendant if it had heard eyewitness rather than hearsay testimony. *See United States v. Estepa,* 471 F.2d 1132, 1136-37 (2d Cir.1972).

[4] Lane's testimony to the first grand jury was based upon his personal knowledge and observation of appellant's activities, not upon hearsay. The record does not reveal any substantial change in Lane's testimony between the first grand jury proceeding and appellant's trial which would have affected the grand jury's decision to indict. Although at the time of the first grand jury Lane was no longer a suspect in the assault upon complainant, the indicting grand jury, through the transcript of Lane's testimony, was aware that initially he had been arrested and therefore had some interest in the outcome of the case. We are persuaded that the trial court did not err in rejecting appellant's motion to vacate sentence on this basis.

[5] Regarding appellant's contention that the prosecutor withheld exculpatory evidence from the grand jury, we observe first that a prosecutor ordinarily is not obligated to present to a grand jury all evidence that is favorable to an accused. [FN5] *655 *United States v. Trass, supra,* 644 F.2d at 797. *See United States v. Lasky,* 600 F.2d 765, 768 (9th Cir.), cert. denied, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979); *United States v. Brown,* 574 F.2d 1274, 1276 (5th Cir.), cert. denied, 439 U.S. 1046, 99 S.Ct. 720, 58 L.Ed.2d 704 (1978); *Boffa, supra,* 89 F.R.D. at 530; *United States v. Mandel,* 415 F.Supp. 1033, 1040 (D.Md.1976). However, where a prosecutor is aware of substantial evidence negating a defendant's guilt which might reasonably be expected to lead a grand jury not to indict, his failure to disclose such evidence to a grand jury may lead to dismissal of the indictment. *See Ciambrone, supra,* 601 F.2d at 623; *Boffa, supra,* 89 F.R.D. at 530. *See generally* 1 ABA Standards for Criminal Justice--The Prosecution Function, § 3-3.6 (2d ed. 1980) ("no prosecutor should knowingly fail to disclose to the grand jury evidence which will tend substantially to negate guilt").

> FN5. Appellant contends that the government failed to introduce the following "exculpatory" evidence: 1) that at the photo array conducted on March 29, 1979, almost 3 weeks after the crime, complainant had picked out a picture of Lane as her assailant with "90% certainty;" 2) that complainant had failed to pick out appellant from a line-up photograph, but instead picked out two other men whom she claimed had features similar to the assailant;

483 A.2d 649
(Cite as: 483 A.2d 649, *655)

3) that Denise Barnes had identified Lane as the person who had come looking for complainant; 4) that the leather jacket matching the complainant's description of that worn by her assailant had been seized from Lane; 5) that Lane's "alibi" witness, Jesse Hall, did not support Lane's alibi.

The third grand jury was informed that Lane had been present in complainant's apartment house with appellant shortly before the crime, that he had become acquainted with complainant, and that he had been identified as a suspect after the crime and had been arrested in connection with it. In addition, the grand jury was informed that complainant had been unable to identify appellant as her assailant during pretrial identification procedures.

We note that the purportedly exculpatory evidence not made known to the third grand jury was either cumulative of the evidence presented which implicated Lane, or was collateral to the issue of appellant's guilt or innocence of the charged crimes. [FN6] Finally, all of the purportedly exculpatory evidence was presented to the jury at trial, and the jury, in turn, found appellant guilty beyond a reasonable doubt of two of the three charged crimes-- first- degree burglary and assault with intent to commit rape.

FN6. Evidence cumulative of complainant's original implication of Lane included Denise Barnes' identification of Lane as the man who had asked to speak with complainant when complainant was in Barnes' apartment, the resemblance between appellant's and Lane's jackets on the night of the incident, and Jesse Hall's inability to recall whether Lane had spent time with him on the night of the incident.

[6] In ruling on the motion to vacate sentence the trial court wrote, inter alia, "The way in which the government handled the presentation of defendant's case to the grand jury leaves much to be desired. However, the court cannot find that the government abused the Grand Jury process either by presenting shoddy merchandise ... or by presenting prior grand jury testimony which the government knew or had reason to know was unreliable." [citations omitted]. On the record before us, we are unable to conclude that the trial court's underlying findings of fact were plainly wrong or that its legal conclusions were erroneous. Thus, we reject appellant's contentions concerning grand jury abuse.

III

[7] Appellant's second contention arises out of the circumstances surrounding complainant's viewing of appellant in the courtroom while complainant was first being presented to the panel of prospective jurors during voir dire. Appellant contends that the trial court's admission of complainant's in-court identification of appellant violated the requirements of due process under the principles of *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) and its progeny. See, e.g., *Manson v. Brathwaite*, 432 U.S. 98, 104-14, 97 S.Ct. 2243, 2247-53, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). [FN7] Alternatively, appellant *656 contends that the trial court abused its discretion in admitting the complainant's in-court identification, because it constituted evidence "so inherently weak or unreliable as to lack probative value." See *Sheffield v. United States*, 397 A.2d 963, 967 (D.C.), cert. denied, 441 U.S. 965, 99 S.Ct. 2414, 60 L.Ed.2d 1071 (1979); *Reavis v. United States*, 395 A.2d 75, 78-79 (D.C.1978). We are unpersuaded by appellant's contentions.

FN7. When there is a due process challenge to an in-court identification based upon allegedly improper identification procedures, we have required the trial court to undertake two main inquiries. First, the court must determine whether the identification procedure employed was unnecessarily suggestive and conducive to irreparable misidentification. See *Stovall v. Denno, supra*, 388 U.S. at 302, 87 S.Ct. at 1972; *Jennings v. United States*, 431 A.2d 552, 558 (D.C.1981), cert. denied, 457 U.S. 1135, 102 S.Ct. 2964, 73 L.Ed.2d 1353 (1982); *Patterson v. United States*, 384 A.2d 663, 665 (D.C.1978). Second, if the court finds that the identification procedure was unnecessarily suggestive, it must then determine whether, in light of all the circumstances, the resulting identification was nonetheless reliable. See *Manson v. Brathwaite, supra*, 432 U.S. at 114, 97 S.Ct. at 2253; *Jennings, supra*, 431 A.2d at 558; *Patterson, supra*, 384 A.2d at 665. Typically, this two-stage inquiry is made by the court in the context of a hearing outside the jury's presence. See *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *United States v. Hurt*, 155 U.S.App.D.C. 217, 220 n. 4, 476 F.2d 1164, 1167 n. 4 (1973); *Clemons v. United States*, 133 U.S.App.D.C. 27, 34, 408 F.2d 1230, 1237 (1968), cert. denied,

394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

Shortly before trial and out of the jury's presence, the prosecutor informed the court that during jury selection complainant had spontaneously recognized appellant, who was seated at the defense table, as her assailant and that she would therefore be making an in-court identification of appellant. In response to the court's question whether the prosecutor or anyone else had previously suggested to the complainant where her assailant would be in the courtroom, the prosecutor replied:

> Your honor, to my knowledge, no one focused her attention on the table. When I had my last discussion with her which was the other day I told her I would not be seeking an in-court identification from her, however ... I told her to be alert and if she in fact did see anyone she recognized she should let me or someone know ....

Appellant's counsel objected to the introduction of the in-court identification. He contended that complainant had failed to make any pretrial identifications of appellant as her assailant and that her courtroom identification of appellant may thus have been the product of the prosecutor's pretrial remarks. Appellant's counsel requested "a hearing as to whether [the prosecutor's conduct was] suggestive constituting a denial of due process."

The trial court initially ruled that the in-court identification appeared to be admissible under *Middleton v. United States*, 401 A.2d 109 (D.C.1979). [FN8] However, noting that it wished to proceed with "an abundance of caution," the court went on to hold a hearing at which complainant testified concerning what she had been told by the prosecutor about the location of persons in the courtroom prior to her recognizing appellant in the courtroom.

> FN8. In *Middleton* a police officer, who had been assaulted by the defendant during the defendant's escape from the scene of a robbery, had been unable to make any pretrial identifications of his assailant. However, at the lunch recess on the first day of appellant's trial, out of the presence of the jury, the officer recognized appellant in the courtroom. Following a hearing outside the presence of the jury, the court concluded that the circumstances presented "no constitutional impermissiveness" and admitted the officer's in-court identification. In rejecting appellant's due process attack on the admission of the identification, we held that "without more, the mere exposure of the accused to a witness in the suggestive setting of a criminal trial does not amount to the sort of impermissible confrontation with which the due process clause is concerned." *Id.* at 132 (footnote omitted). We further noted that "absent a constitutionally cognizable impropriety in the procedure by which the accused is exposed to the witness, the fact that such a confrontation was suggestively focused does not by itself raise a bar to the witness' identification testimony." *Id.* at 133; *see also Reavis v. United States, supra,* 395 A.2d at 78.

Complainant testified that 3 days before trial she had met with the prosecutor and Detective Terrell. She said that the prosecutor told her that she would be asked to *657 make an in-court identification of her assailant only if she were able to do so, and that no one had directed her to look for her assailant anywhere in the courtroom. On cross-examination, complainant elaborated that the prosecutor had told her that when she was introduced to the jury, she "may or may not" see her assailant, and that if she were to see him, she was to tell the prosecutor. She also stated that a few weeks before trial, the prosecutor took her to a courtroom and, because she had never previously been to a trial, described to her the respective locations of the judge, jury, testifying witnesses and the defense table.

Following the brief hearing held out of the presence of the jury, the trial judge stated that he credited the version of the pretrial events offered by complainant and the prosecution, and ruled that he would admit complainant's in-court identification under *Middleton, supra,* "subject to cross-examination in all [its] facets." Appellant now contends, as he did following the court's ruling at trial, that unlike the situation in *Middleton,* the prosecutor here engaged in "intentionally suggestive" pretrial efforts to obtain an identification from complainant, *see generally United States v. York,* 138 U.S.App.D.C. 197, 426 F.2d 1191 (1969); *Mason v. United States,* 134 U.S.App.D.C. 280, 414 F.2d 1176 (1969), and that consequently, as a matter of due process, the hearing should be extended to the reliability of the complainant's identification. *Jennings, supra,* 431 A.2d at 558; *Patterson, supra,* 384 A.2d at 667.

[8] We cannot say that the trial court erred in its conclusion that the prosecutor's pretrial conversations with complainant did not constitute "intentionally suggestive efforts by the prosecution to obtain an

483 A.2d 649
(Cite as: 483 A.2d 649, *657)

Page 53

initial identification." *Brown v. United States*, 327 A.2d 539, 541 (D.C.1974). The circumstances here differ somewhat from those in *Middleton, supra* and *Brown, supra,* in that in those cases the events which supposedly tainted identification took place in the courtroom without any direct involvement of the prosecutor, whereas here the prosecutor's pretrial conversations assertedly influenced complainant's identification of appellant. While our ruling here should not be viewed as sanctioning the prosecutor's actions, particularly his pointing out defense table to complainant, we discern no reason on this record to disagree with the trial court's conclusion.

Since the hearing conducted by the court led to the conclusion that there was no unnecessary suggestiveness, there was no need to extend the hearing to the issue of the reliability of the identification. *Jennings, supra,* 431 A.2d at 558; *Patterson, supra,* 384 A.2d at 667.

We add that, during trial, appellant's counsel developed fully the issues surrounding complainant's identification of appellant. The jury then evaluated the evidence of identification under the instructions of the trial judge, "the very task our system must assume juries can perform." *Watkins v. Sowders*, 449 U.S. 341, 347, 101 S.Ct. 654, 658, 66 L.Ed.2d 549 (1981).

IV

Appellant's third contention is that the trial court abused its discretion in denying appellant's request for a missing witness instruction for Jesse Hall, whom Lane testified he was with at the time of the incident, and for Lane's mother, father, and brother, who purportedly heard appellant tell Lane that he had had sexual intercourse with complainant on the night of the assault. We find no error in the court's action.

[9] In order for a party to be entitled to a missing witness instruction, the court must first determine that the requesting party has satisfied two conditions: 1) that the witness be "peculiarly available" to the party against whom the inference is sought to be made, and 2) that the witness' testimony would be likely to elucidate the transaction at issue. See *Graves v. United States*, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893); *Thomas v. United States*, 447 A.2d 52, 57 (D.C.1982); *Cooper *658 v. United States*, 415 A.2d 528, 533 (D.C.1980).

[10] A witness is not peculiarly available to a party when there is a showing that his identity was known to the opposing party seeking the instruction, who thus could require his physical presence by subpoena. Nor is a witness peculiarly available to a party if, as a practical matter, the witness' testimony is expected to be hostile to that party. *See, e.g., Thomas, supra,* 447 A.2d at 57-58; *Cooper, supra,* 415 A.2d at 533 n. 11.

[11][12] To meet the elucidation requirement, the requesting party must show that the witness' testimony would be important to the defendant's case, would be noncumulative, or would otherwise be superior to other testimony already given on the matter. See *Thomas, supra,* 447 A.2d at 57; *Cooper, supra,* 415 A.2d at 534. Appellant did not establish the existence of the preconditions--peculiar availability and elucidation--necessary to warrant missing witness instructions with regard to Jesse Hall and Lane's relatives.

With respect to Hall, appellant failed to show that Hall was either physically or practically unavailable to appellant. Moreover, the record reveals that Hall may not have been able to elucidate the transaction, *i.e.,* Lane's "alibi." According to Terrell, Hall was unable to remember whether or not Lane had visited him on the night of the incident.

With respect to Lane's relatives, to the extent that they shared with Lane an identity of interest, their testimony would have been simply cumulative of and not superior to Lane's testimony. And if, as appellant contends, their testimony would have been unbiased and disinterested, unlike Lane's, their interests would not have been sufficiently hostile to appellant's to have rendered them practically unavailable to appellant. See *Thomas, supra; Cooper, supra.* [FN9] For the foregoing reasons, we find that the trial court ruled correctly in denying appellant's request for missing witness instructions. The prerequisites for such instructions were not present.

FN9. In a footnote, appellant suggests that Lane's relatives were automatically rendered physically unavailable to appellant under the missing witness rule because appellant learned of their existence and identities for the first time in the course of trial. *See, e.g., Brown v. United States,* 388 A.2d 451, 459 (D.C.1978); *United States v. Stevenson,* 138 U.S.App.D.C. 10, 13-14, 424 F.2d 923, 926-27 (1970). Contrary to appellant's contentions, we have not adopted this proposition as "settled law." In many circumstances, a party may readily secure by subpoena the testimony of a witness who

comes to that party's attention for the first time during trial. *See, e.g. Dent v. United States,* 404 A.2d 165, 170 (D.C.1979); *Brown v. United States,* 134 U.S.App.D.C. 269, 271, 414 F.2d 1165, 1167 (1969) (per curiam); *Wynn v. United States,* 130 U.S.App.D.C. 60, 64-65 n. 23, 397 F.2d 621, 625-26 n. 23 (1967). We are not persuaded that, under the circumstances here, members of witness Lane's family were unavailable to appellant.

[13] In so ruling, we reiterate two points made for the court in Chief Judge Newman's comprehensive discussion of the missing witness rule in *Thomas, supra.* The first is that even where the prerequisites of elucidation and peculiar availability are satisfied, the court has discretion to refuse the instructions. "This discretionary decision should be guided by reference to the underlying rationale for the doctrine, by considering 'whether from all circumstances an inference of unfavorable testimony from an absent witness is a natural and reasonable one.' " *Thomas, supra,* 447 A.2d at 58 (citations omitted).

A second point made in *Thomas* was the following:
> This and other recent cases illustrate that missing witness inferences are being sought, and are often permitted, in a much broader class of circumstances than the doctrine was ever meant to reach. This has occasioned numerous reversals and thus led to retrials that could easily have been avoided. The upshot is that both the court's and the parties' time and resources are expended unnecessarily. A more restrained and cautious use of the doctrine would not only be *659 truer to its underlying rationale, but would decrease the unnecessary burden on the judicial system that results from its abuse.

*Thomas, supra,* 447 A.2d at 60 (citations omitted).

While phrased in terms that apply specifically to missing witness inferences urged by the prosecution, our statement in *Thomas* has application to defense requests as well, and reinforces our conclusion that the appellant's missing witness argument here is without merit.

V

[14] Appellant's next contention is that the trial court abused its discretion in admitting Detective Terrell's testimony that she had spoken over the telephone with appellant prior to his arrest and that he had agreed to come to the police station to give a statement about the incident, but never appeared. Assuming without deciding that the government failed to lay a proper foundation that the recipient of the phone call had actually been appellant, *see, e.g., United States v. Johnston,* 318 F.2d 288, 292 (6th Cir.1963), we are satisfied that any error in the admission of the testimony was harmless. *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

Terrell's testimony was on a matter entirely collateral to appellant's guilt of the charged offenses. Neither counsel referred to this testimony in closing argument. The jury was not instructed by the court on the evidence, either as it may have manifested appellant's consciousness of guilt or otherwise. Appellant waited until just before closing arguments to object to the admission of the statement, thereby depriving the government of the opportunity to have corrected any error in a timely manner by attempting to lay an adequate foundation. Finally, the government's evidence of appellant's guilt was weighty. For the foregoing reasons, we are convinced that the jury's verdict was not "substantially swayed" by the error. *Id.*

VI

Appellant's final contention is that the prosecutor improperly commented in his closing argument upon appellant's failure to testify at trial, infringing upon his Fifth Amendment rights. Appellant isolates the following remark as improper:
> If he [George Lane] was lying, why would he say that it was Kelvin Miles that was with him? No evidence of any animosity or hate. He says he was his friend. If he was lying, I submit you wouldn't tell them the name of a real person, Kelvin Miles, that they could go and find. *A real person if he gave them that name might be able to conclusively disprove George Lane's allegation. He might be able to prove he was in a hospital.*

TR. 536-36 (emphasis supplied). We are not persuaded by appellant's contention.

[15][16] In order to determine whether a prosecutor improperly commented upon a defendant's silence at trial, we must determine whether the prosecutor's statements "were manifestly intended or [were] of such character that the jury would naturally and necessarily take [them] to be a comment on the

483 A.2d 649
(Cite as: 483 A.2d 649, *659)

Page 55

failure of the accused to testify." *Wright v. United States,* 387 A.2d 582, 584 (D.C.1978); *Brown v. United States,* 383 A.2d 1082, 1085 (D.C.1978). We do not regard the remarks challenged here either as demonstrating the prosecutor's intent to deprive appellant of a fair trial or as directly and unambiguously drawing the jury's attention to appellant's failure to testify. Rather, we observe that on their face these remarks were plainly the prosecutor's attempt to place the credibility of George Lane in a favorable light. They amount to a suggestion to the jury that, if Lane had set out to lie to the police about another's involvement in the incident to the police, it would have been in Lane's best interest to have provided the police with a fictitious name, in order to avoid the risk that the person named would later *660 contradict Lane's version of the events. [FN11] We are therefore satisfied that a reasonable juror would not have naturally and necessarily interpreted the prosecutor's remarks as comments on appellant's silence at trial. *See Wright, supra.* In view of the foregoing, the judgment and order on appeal are

FN11. Appellant's counsel seemed to recognize this plain meaning of the prosecutor's remarks when in his closing argument, he remarked to the jury:
Now, Mr. Stanley said this. He says that George Lane--if he is really covering up here, why doesn't he give the police the fictitious name? He is free. He doesn't have to. But Mr. Stanley is missing an important fact. Isn't he? That when Mr. Lane first gave the name he wasn't free. Now, is that going to help him get off the hook, ladies and gentlemen? You decide for yourself.
TR. II, 577.

*Affirmed.*

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

07cv441
PLF

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS
Kelvin J. Miles

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

PRO SE (PR)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
#157867

## DEFENDANTS
United States

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

CASE NUMBER  1:07CV00441
JUDGE: Paul L. Friedman
DECK TYPE: Habeas Corpus/2255
DATE STAMP: 03/06/2007

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP FOR PLAINTIFF

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ☐ A. Antitrust
☐ 410 Antitrust

### ☐ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction
Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

**No Summons Issued**

|  ☒ G. *Habeas Corpus/ 2255*<br>☒ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ H. *Employment Discrimination*<br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ I. *FOIA/PRIVACY ACT*<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ J. *Student Loan*<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ K. *Labor/ERISA (non-employment)*<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ L. *Other Civil Rights (non-employment)*<br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ M. *Contract*<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ N. *Three-Judge Court*<br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ Multi district Litigation   ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 USC 2241

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   **DEMAND $** 0   Check YES only if demanded in complaint   **JURY DEMAND:** ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES ☒ NO   If yes, please complete related case form.

**DATE**   **SIGNATURE OF ATTORNEY OF RECORD**

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

